[No. 32248-3-III.   Division Three.   August 6, 2015.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD LEE DYSON, JR., *Appellant*.

*David L. Donnan* and *Mick Woynarowski* (of *Washington Appellate Project*), for appellant.

*Lawrence H. Haskell, Prosecuting Attorney*, and *Brian C. O'Brien* and *Larry D. Steinmetz, Deputies*, for respondent.

¶1 FEARING, J. — A jury found Donald Dyson guilty of two counts of first degree assault stemming from a bar parking lot fight. The jury also found by special verdict that Dyson was armed with a deadly weapon during the commission of the assaults. Dyson appeals his conviction and contends that the trial court (1) violated his right to a public trial, (2) incorrectly instructed the jury on the definition of "deadly weapon," and (3) incorrectly instructed the jury on transferred intent. We affirm his conviction.

¶2 At sentencing, the trial court found Donald Dyson's conduct qualified for imposition of the statutorily mandated five-year minimum term under RCW 9.94A.540 because the force employed by Dyson in committing the assaults could likely have resulted in death. Therefore, the trial court ordered the mandatory minimum confinement for each charge. On appeal, Dyson contends the judicial finding violated his right to a jury trial. Based on the recent United States Supreme Court decision in *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (plurality opinion), we agree. We vacate Dyson's sentence and remand for resentencing.

## FACTS

¶3 One evening Julie Rodriguez-Reeves invited Donald Dyson to party with friends and her. Dyson accepted.

Dyson, Rodriguez-Reeves, her roommate Jodi Morphis, and her son's girlfriend Alyssa Bishop assembled at the Corner Club Bar & Grill in Spokane at 8 p.m. After an hour, the quartet moved to the Special K Tavern & Eatery, another Spokane bar. At the Special K, Dyson socialized with other patrons, including Arthur Ward. Dyson and others imbibed until the bar closed. Morphis later testified she was "[p]retty sure that everyone I was with was intoxicated." Report of Proceedings (RP) at 343.

¶4 When the Special K bartender announced closing time, Donald Dyson exited to the parking lot, where he joined Julie Rodriguez-Reeves, Jodi Morphis, Arthur Ward, and Alyssa Bishop. In the parking lot, Spencer Schwartzenberger, another Special K patron, sat in his Ford Explorer with music emitting from the vehicle's speaker system. Dyson enjoyed the speakers' sound, chatted with Schwartzenberger, and eventually entered the passenger seat of the Ford Explorer. After a brief conversation with Dyson, Schwartzenberger called to his friend Chris Dailey that it was time to leave. Dailey ignored Schwartzenberger's entreaty and continued to converse with Rodriguez-Reeves and Jodi Morphis. Dyson overheard Dailey invite Rodriguez-Reeves to Dailey's home and, when she refused, Dailey called her crass names. Schwartzenberger confirmed that Dailey uttered "choice words" during the interaction.

¶5 Donald Dyson took offense to Chris Dailey's comments to Julie Rodriguez-Reeves, and one of the two men started an altercation. As the two men pushed and shoved, Spencer Schwartzenberger exited his Explorer and sought to end the fight. Schwartzenberger attempted to separate the two combatants by pushing them away from each other. Dyson thought Schwartzenberger had joined the clash against him. Dyson pulled and waved a knife so Schwartzenberger and Dailey would leave him alone. As he "waved" his knife, Dyson stabbed Schwartzenberger in the throat in what Schwartzenberger described as a "roundhouse-type motion." RP at 227. Dyson testified at trial that someone shoved

him from behind toward Schwartzenberger, and the shove caused the wounding of Schwartzenberger.

¶6 After Donald Dyson stabbed Spencer Schwartzenberger, Arthur Ward tackled Dyson. During the struggle, Ward tried to grab the knife from Dyson's hand and was himself stabbed in the hand and cut on the temple. Dyson also twice punched Ward. Dyson arose from the tackle and walked to a friend's son's house.

## PROCEDURE

¶7 The State of Washington charged Donald Dyson with two counts of assault in the first degree. One count covered the stabbing of Spencer Schwartzenberger and the other count addressed the cutting of Arthur Ward. The State alleged that Dyson committed each assault with specific intent to inflict great bodily harm with a deadly weapon or by any force or means likely to produce great bodily harm or death. The State sought a deadly weapon sentencing enhancement for each count.

¶8 During voir dire, the trial court heard the State's for-cause challenge to a venirewoman on the record at the judge's bench, out of the jury's hearing. The trial court also conducted peremptory challenges on paper. Before addressing the challenge for cause, the trial court commented to the jury:

THE COURT: Folks, at this point the attorneys have some work to do in selecting the jury. They are going to work back and forth with a piece of paper and indicate to me what their challenges are, and so forth.

This is a time strangely enough when you and I have to be present in this room, but we don't really get to do anything. We are going to sit and literally look at each other, as odd as that may seem.

If you have something with you that you would like to read, be it a tablet or an actual whatever, go right ahead. Also, if you want to visit with your neighbor, that is fine; just keep the noise

as low as possible so the attorneys can hear themselves think, and I will let them proceed.

MR. MARTIN [State's counsel]: Your Honor, do you want us to approach for cause first?

THE COURT: Yes, you can do that.

(The following was held out of the hearing of the jury:)

THE COURT: As to cause?

MR. MARTIN: You know, my only challenge for cause is 29. She seemed to be the one most concerned about remaining fair. That is my only challenge.

MR. DRESSLER [Defense counsel]: Your Honor, by the same token she did indicate she thinks she could handle it. That is why I spoke to both of them.

But I don't have challenges for cause.

THE COURT: All right. Appropriate to say -- I think her answer wasn't clear enough regarding being fair in this particular case, but I don't think she's there, so I'm going to strike her for cause.

That will be the only strike for cause? All right.

RP at 170-72.

¶9 During trial, Donald Dyson anticipatorily objected to the State questioning a Spokane police officer regarding the current location of Alyssa Bishop or Julie Rodriguez-Reeves and whether either had cooperated in the investigation. The trial court entertained argument from counsel concerning the objection during a sidebar conference on the record but out of the hearing of the jury.

¶10 After closing arguments, the trial court instructed the jury on the two first degree assault charges as follows:

To convict the defendant of the crime of assault in the first degree, as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about SEPTEMBER 8, 2012, the defendant assaulted SPENCER SCHWARTZENBERGER;

(2) That the assault was committed with a deadly weapon or by a force or means likely to produce great bodily harm or death;

(3) That the defendant acted with intent to inflict great bodily harm; and

(4) That the acts occurred in the State of Washington.

Clerk's Papers (CP) at 85. The trial court submitted an identical instruction for the second count of first degree assault involving Arthur Ward.

¶11 The court instructed the jury on the definition of "deadly weapon" as follows:

> Deadly weapon *also* means any weapon, device, instrument or article which under the circumstances in which it is used, attempted to be used, or threatened to be used is readily capable of causing death or substantial bodily harm.

CP at 82 (emphasis added). This definition of deadly weapon also appeared as part of the court's instruction on the deadly weapon special verdict with the following additional language:

> A knife having a blade longer than three inches is a deadly weapon. Whether a knife having a blade less than three inches long is a deadly weapon is a question of fact that is for you to decide.

CP at 95.

¶12 The State of Washington posited that Donald Dyson could be guilty of assaulting Arthur Ward through the doctrine of transferred intent. The State secured a jury instruction on that theory that read:

> If a person acts with intent to assault another, but the act harms a third person, the actor is also deemed to have acted with intent to assault the third person.

CP at 81. In overruling Dyson's objection to the transferred intent instruction, the trial court ruled:

> I think there is evidence, and I think that is -- if there is evidence in the case that would allow this to be argued, each side is entitled to their theory. And so regardless of what evidence may come in now, there is some evidence in the trial

that would allow that instruction. So I'm going to allow that to stand.

RP at 645. During closing, the State explained the two theories under which the jury could find Dyson guilty of assault as to both Schwartzenberger and Ward:

> But when you get down to intent, it is not essential in this case for the [S]tate to prove that Mr. Dyson intentionally assaulted Arthur Ward for you to find him guilty of assault in the first degree.
>
> There's a legal theory that the [c]ourt instructed you on called transferred intent. And what that means is, if you believe beyond a reasonable doubt that Mr. Dyson was trying to get another shot in at Mr. Schwartzenberger, like Mr. Ward described, and that he intended the great bodily harm or to inflict more great bodily harm than he had already done, but he instead assaults a second person -- in this case they call it a third person -- and instead assaults somebody else, that the intent that he was using towards Mr. Schwartzenberger transfers to make Mr. Ward a victim in that case.
>
> So if you find that Mr. Dyson intended to get Mr. Schwartzenberger again, and instead got Mr. Ward, you can find him guilty of assault in the first degree. Or, alternatively, you can take somewhat of what Mr. Dyson was saying, that he was slashing backward as somebody was tackling him to protect somebody else, and then he still intended great bodily harm by going towards a person's face with a knife, coming very near to his eye.

RP at 760.

¶13  The jury found Donald Dyson guilty of both counts of assault in the first degree and also found by special verdict that Dyson was armed with a deadly weapon during the commission of the assaults. On the day of the announcement of the verdict, the clerk filed the notes for both the for-cause challenge and the peremptory challenges.

¶14  At sentencing, the trial court checked a box on the sentencing form that read that Donald Dyson used force or means likely to result in death or intended to kill. This

check mark required the court to impose a mandatory minimum term of sixty months incarceration for each count. In an oral ruling, the trial court commented that Dyson nearly killed Spencer Schwartzenberger in the assault. The trial court also remarked that Arthur Ward suffered permanent and significant bodily and emotional injuries.

¶15 The trial court calculated Donald Dyson's sentencing range as 144-184 months for the assault on Spencer Schwartzenberger and 117-147 months for the assault on Arthur Ward. The trial court sentenced Donald Dyson to 140 months confinement for the Schwartzenberger assault, 108 months for the Ward assault, and 24 months for the deadly weapon sentencing enhancement for each count, for a total of 296 months of confinement. The trial court also imposed a mandatory minimum sentence of five years for each count to be served consecutively.

## LAW AND ANALYSIS

¶16 On appeal, Donald Dyson seeks a new trial on the ground that the trial court violated his public trial rights and committed instructional error. Dyson also contends the trial court violated his constitutional right to trial by jury by imposing a mandatory minimum sentence. Since we publish only that portion of our opinion addressing the mandatory minimum sentence, we discuss that issue first.

*Issue 1: Whether the trial court violated Donald Dyson's right to a jury trial when imposing a mandatory minimum sentence?*

*Answer 1: Yes.*

¶17 Donald Dyson contends that the trial court violated his right to a jury trial under the United States Constitution's Sixth Amendment by finding at sentencing the facts necessary to warrant imposing a mandatory minimum

sentence of five years for each of his first degree assault convictions. He argues that a recent United States Supreme Court decision, *Alleyne v. United States*, 133 S. Ct. 2151 (2013), holds that any factual finding required to trigger a mandatory minimum sentence constitutes an element of the crime and therefore must be submitted to a jury. The State of Washington concedes error in the imposition of the mandatory minimum sentence by judicial finding. We agree with both parties and remand for resentencing.

¶18 Errors implicating a criminal defendant's Sixth Amendment right to a jury trial may be raised for the first time on appeal. *State v. Hughes*, 154 Wn.2d 118, 143, 110 P.3d 192 (2005), *abrogated on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); *State v. O'Connell*, 137 Wn. App. 81, 89, 152 P.3d 349 (2007). Whether a sentence is legally erroneous is reviewed de novo. *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 667, 211 P.3d 1023 (2009).

¶19 The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. Article I, section 21 of the Washington Constitution similarly provides, in relevant part, that "[t]he right of trial by jury shall remain inviolate." The jury serves as an intermediary between the State and a judge as an agent of the State, on the one hand, and the criminal defendant, on the other hand. *United States v. Gaudin*, 515 U.S. 506, 510-11, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). The right to a jury trial is a great bulwark of civil and political liberties. *Alleyne v. United States*, 133 S. Ct. at 2161 (2013). When coupled with the command of the due process clause of the Fourteenth Amendment, the Sixth Amendment demands that an impartial jury find beyond a reasonable doubt all elements of the charged offense for the defendant to be convicted. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

¶20 State legislatures, including the Washington Legislature, have enacted numerous sentencing mandates, factors,

and enhancements that impact the punishment meted on a convicted defendant. In turn, legislatures and courts seek to distinguish between offenses and sentencing features, with the fact-finding for the crime relegated to a jury and the fact-finding for the punishment assigned to a judge. Under this distinction, a sentencing factor is not an element of the crime. Yet no principled basis exists for treating a fact increasing the term of the imprisonment differently from the facts constituting the base offense. *Alleyne*, 133 S. Ct. at 2157 (plurality opinion). The end result is the same. As the title to Fyodor Doestoevsky's novel suggests, crime and punishment go together.

¶21 Under the common law at the time of the adoption of the United States Bill of Rights, a fact essential to the penalty was an element of the crime. *Alleyne v. United States*, 133 S. Ct. at 2159 (plurality opinion). Therefore, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. at 490. The term "statutory maximum" means the maximum sentence a judge may impose based solely on the jury's verdict without making any additional findings. *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Therefore, any fact supporting a sentencing enhancement must be either admitted by a defendant or found by the jury. *Blakely*, 542 U.S. at 304.

¶22 The United States Supreme Court recently clarified the holding of *Apprendi* as also applying to a trial court's imposition of a mandatory minimum sentence. *Alleyne v. United States*, 133 S. Ct. at 2160. Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. *Apprendi*, 530 U.S. at 483 n.10. Mandatory minimum sentences increase the penalty of the crime. *Alleyne*, 133 S. Ct. at 2155. Like a maximum sentence, the minimum sentence is intended to and does dictate the

amount of time spent confined. Because "facts increasing the legally prescribed floor *aggravate* the punishment . . . the fact necessarily forms a constituent part of a new offense and must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2161-62. *Alleyne* overruled *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) (plurality opinion), in which the high court held permissible judicial fact-finding that increased the mandatory minimum sentence for a crime. In fairness to the trial court, the Supreme Court decided *Alleyne* after the sentencing of Donald Dyson.

¶23 RCW 9.94A.540, Washington's mandatory minimum sentencing statute, prescribes, in relevant part:

> (1) Except to the extent provided in subsection (3) of this section, the following minimum terms of total confinement are mandatory . . . :
>
> . . . .
>
> (b) An offender convicted of the crime of *assault in the first degree* . . . where the offender used force or means *likely to result in death or intended to kill the victim* shall be sentenced to a term of total confinement not less than five years.
>
> . . . .
>
> (2) During such minimum terms of total confinement, no offender subject to the provisions of this section is eligible for community custody, earned release time, furlough, home detention, partial confinement, work crew, work release, or any other form of early release authorized under RCW 9.94A.728, or any other form of authorized leave of absence from the correctional facility while not in the direct custody of a corrections officer.

(Emphasis added.)

¶24 Under RCW 9A.36.011(1)(a), a jury, in order to find a defendant guilty of assault in the first degree, must find beyond a reasonable doubt that the defendant assaulted another person "with a firearm or any deadly weapon or by any force or means *likely to produce great bodily harm or death*." (Emphasis added.) RCW 9.94A.540 requires additional evidence to impose the mandatory mini-

mum sentence. Under the latter statute, the defendant must have employed force likely to result in death or intended to kill, not simply force likely to cause great bodily harm. Therefore, Washington courts have held that RCW 9.94A.540's five-year mandatory minimum does not automatically attach to a first degree assault conviction. *In re Pers. Restraint of Huy Khac Tran*, 154 Wn.2d 323, 329-30, 111 P.3d 1168 (2005); *State v. McChristian*, 158 Wn. App. 392, 402-03, 241 P.3d 468 (2010). The lack of direct overlap between the assault and mandatory minimum statutes indicates that the legislature intended to increase the punitive requirement for certain assaults that are characterized by unusually, within the universe of assaults, violent acts or accompanied by a particularly sinister intent. *Tran*, 154 Wn.2d at 329-30. Thus, the imposition of the mandatory minimum necessarily requires a separate factual finding beyond the jury's finding of guilt of first degree assault. *McChristian*, 158 Wn. App. at 403.

¶25 Prior to *Alleyne v. United States*, this court held that *Blakely v. Washington* did not require that a jury make findings requisite to a mandatory minimum sentence. *McChristian*, 158 Wn. App. at 403. Judicial findings were sufficient under the Sixth Amendment so long as a "mandatory minimum sentence did not increase the penalty for first degree assault beyond the statutory maximum standard range sentence." *McChristian*, 158 Wn. App. at 404. In so reasoning, this court analogized McChristian's case with a Washington Supreme Court case that held *Blakely* did not apply to exceptional minimum sentences under former RCW 9.94A.712 (2005) that do not exceed the maximum sentence allowed. *McChristian*, 158 Wn. App. at 403.

¶26 In *Alleyne v. United States*, the United States Supreme Court held that the Sixth Amendment required a jury to find beyond a reasonable doubt all of the facts necessary for a trial court to impose a mandatory minimum sentence on Allen Ryan Alleyne for using a firearm in relation to a crime of violence. The relevant statute imposed

a seven-year mandatory minimum if Alleyne brandished the firearm during the crime. Although the jury found that Alleyne used a firearm during the crime, it made no finding that he brandished the weapon. The district court found that evidence supported a finding of brandishing and sentenced Alleyne accordingly. The Supreme Court reversed. The high court clarified that the principle announced in *Apprendi* applies with equal force to facts increasing the mandatory minimum. *Alleyne*, 133 S. Ct. at 2160. Therefore, a jury must find beyond a reasonable doubt those facts that trigger a mandatory minimum sentence. *Alleyne*, 133 S. Ct. at 2161.

¶27  In the case on appeal, the trial court, rather than the jury, found the facts necessary to impose a mandatory five-year minimum sentence on Donald Dyson for each of his two convictions for first degree assault. The jury's guilty verdict alone was not enough to find that Washington's five-year mandatory minimum should apply. Under *Alleyne*, the trial court should have submitted a separate instruction to the jury regarding the applicability of the five-year mandatory minimum to each of Dyson's first degree assault convictions. The mandatory floor of Dyson's sentence was as important to him as its ceiling. Contrary to the perception of the dissent, the error is not harmless since the trial court's fact-finding could lead to Dyson missing early release and, conversely, serving a longer imprisonment.

¶28  Later in this opinion, we affirm the convictions of Donald Dyson. Nevertheless, we remand for resentencing with instructions that the trial court remove the mandatory minimum sentences for each crime. The resentencing will allow Donald Dyson to receive potential early release credits.

¶29  We vacate Donald Dyson's sentence and remand for resentencing. In the unpublished portion of this opinion, we affirm Dyson's conviction.

¶30  The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accor-

dance with RCW 2.06.040, the rules governing unpublished opinions.

SIDDOWAY, C.J., concurs.

¶31 KORSMO, J. (dissenting) — I agree with nearly all of the majority opinion except for its conclusion. The issue identified here is not a mandatory minimum sentence problem. *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013). The actual issue is one of statutory interpretation that has already been settled by *In re Personal Restraint of Huy Khac Tran*, 154 Wn.2d 323, 111 P.3d 1168 (2005), and *State v. McChristian*, 158 Wn. App. 392, 241 P.3d 468 (2010), *review denied*, 171 Wn.2d 1003 (2011). Although there is an *Alleyne* error in this case, that error is harmless. *Alleyne* did not change the definition of "punishment" under the Sixth Amendment and does not extend the Sixth Amendment jury trial right to the collateral consequences of a factual finding that establishes a minimum sentence. Since the trial court complied with the procedure set forth in *McChristian*, I would affirm.

¶32 After struggling for many years to define the scope of the constitutional right to a jury trial as it related to sentencing, the United States Supreme Court finally cobbled together a majority to declare a rule on the topic in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The rule of *Apprendi* was then applied to Washington's determinate sentencing statute, the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, in *Blakely v. Washington*, 542 U.S. 296, 303-05, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The court concluded that the high end of the standard range was the "statutory maximum" to which the jury trial right applied. *Id.* at 303-04. Post-*Apprendi*, the Court declined to

extend its ruling to minimum sentences. *Id.* at 304; *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 153 L. Ed. 2d 524 (2002) (plurality opinion).

¶33 That practice changed in *Alleyne*. At issue there was the sentence imposed following a robbery conviction. The jury determined that the defendant had carried a firearm, a fact that mandated a five year minimum sentence. 186 L. Ed. 2d at 322. The trial judge "found" that the defendant had brandished a firearm in the course of the robbery, a fact that mandated a seven year minimum sentence. *Id.* The Supreme Court overturned the brandishing sentence, with the plurality reasoning that an increased minimum sentence acted like an increased maximum sentence, both of which altered the "prescribed range of sentences to which a defendant is exposed and do so in a manner that aggravates the punishment." *Id.* at 324 (plurality opinion). The fifth vote for the result came from Justice Breyer, who would have overruled *Apprendi*, but agreed with the plurality to overturn *Harris* and remove what he considered a sentencing anomaly created by that case. *Id.* at 334-35 (Breyer, J., concurring in part and concurring in judgment).

¶34 The application of the *Alleyne* opinion to RCW 9.94A.540(1)(b)[1] is now straightforward. The statute creates a mandatory minimum sentence that must, under *Alleyne*, be found by a jury. That was not done here; I agree with the majority that the lack of a finding was error. However, the *Alleyne* error was harmless.

¶35 Even with an offender score of zero, under the SRA the standard range for first degree assault has always exceeded 60 months, the minimum term set by the finding.[2]

---

[1] "An offender convicted of the crime of assault in the first degree . . . where the offender used force or means likely to result in death or intended to kill the victim shall be sentenced to a term of total confinement not less than five years."

[2] It seems likely that the primary purpose of the minimum term requirement, which was enacted by Laws of 1981, ch. 137, § 12, was to influence the Sentencing Guidelines Commission when it devised the ranges and seriousness levels for the crimes. The commission's ranges subsequently were adopted by the legislature

*See* Laws of 1983, ch. 115, §§ 2, 3 (establishing sentence ranges and assigning seriousness levels to offenses; creating range of 62-82 month sentence for first degree assault with offender score of zero). The minimum term finding thus had no effect on the sentencing range established by the jury's verdicts in Mr. Dyson's case. Even if a jury had made the same finding entered by the trial judge, there would have been no change in the range of incarceration Mr. Dyson faced for his actions—and thus this is not an *Alleyne* violation.

¶36 Apparently recognizing that the *Alleyne* error was of no consequence to his sentence range, Mr. Dyson focuses on one of the collateral consequences of that finding, the loss of any opportunity to earn early release time during the period of the minimum sentence. *See* RCW 9.94A.540(2). That same consequence was at issue in *Tran*. There the court concluded that because first degree assault, even when committed with a firearm, does not completely overlap the more limited instances of first degree assault subject to the minimum term requirement, the Department of Corrections erred in making its own finding and imposing the minimum term. 154 Wn.2d at 332.

¶37 This court revisited *Tran* in *McChristian*. Division Two began its analysis of the issue by agreeing with the defendant that the minimum term statute required "a factual finding that a defendant meets the requirements of the statute before a trial court may impose a mandatory minimum sentence." *McChristian*, 158 Wn. App. at 402. It found that *Tran* implicitly required a factual finding before the minimum term was imposed. *Id.* at 403. It disagreed, however, with the defendant's argument that the Sixth Amendment required a jury to make the finding, deciding that a judge could do so. *Id.* at 403-05.

---

two years later. *See* Laws of 1983, ch. 115, § 1. Although no minimum sentence for first degree assault existed at the time the SRA first was enacted in 1981, there had been a five year minimum term for that offense prior to 1976. *See* Laws of 1909, ch. 249, § 161, *repealed by* Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(27).

¶38 In light of *Alleyne*, an argument can be made that *McChristian* is at least partially defunct and that a jury, not a judge, must make the factual determination that governs the additional consequences listed in RCW 9.94A.540(2). *McChristian* still stands, and should still stand, unless either *Alleyne*'s definition of punishment is expanded to include the collateral consequences of a minimum term finding or the Washington Supreme Court invalidates the *McChristian* interpretation of *Tran*. Neither of those events has happened yet. Critically for this case, nothing in *Alleyne* changed the *Apprendi/Blakely* concept of what constituted "punishment" within the meaning of the Sixth Amendment right to a jury trial—the range of sentences[3] which a judge could impose based on the facts found by the jury. Whether a prisoner earns earned early release credits is not a sentencing option left to the discretion of the sentencing judge. Limitation on earned early release simply is not punishment under *Apprendi* and its progeny.

¶39 If the *Apprendi/Alleyne* conception of "punishment" is to be extended to include the opportunity to earn early release, we should acknowledge what we are doing and explain why the extension is warranted. This, however, is not the case to have that discussion. Mr. Dyson did not object to the lack of a jury finding, the court's check-box minimum term finding, or the judge's comments at sentencing concerning how fortunate it was that no one died. Under *McChristian*, these actions were enough to satisfy the statute's fact-finding requirement. Any question of statutory construction concerning the identity of the appropriate fact-finder thus was waived by the failure to raise the issue to the trial court. RAP 2.5(a). Since the United States Supreme Court has not yet extended its Sixth Amendment jurisprudence to collateral consequences of a jury's factual

---

[3] Financial penalties triggered by specific factual determinations have joined incarceration on the list of what constitutes "punishment" under the Sixth Amendment. *S. Union Co. v. United States*, ___ U.S. ___, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012).

finding, it is doubtful this case presents a manifest issue of constitutional error that we should be reviewing. RAP 2.5(a)(3). For both reasons, Mr. Dyson's claim should fail.

¶40 Although compliance with *Alleyne* is necessary to impose a minimum term of 60 months incarceration, the low end of the standard range for first degree assault already exceeds that amount and the jury's verdict means that the minimum term finding is at worst harmless error under *Alleyne*. Even if not required by *Alleyne*, the prudent prosecutor should seek findings in any appropriate case involving a minimum term and remove this potential issue in the future.[4]

¶41 I respectfully dissent.

Review denied at 184 Wn.2d 1038 (2016).

---

[4] If the charging theory of first degree assault was limited to the options covered by the mandatory minimum sentence, it appears that a jury verdict alone would be sufficient to allow the trial judge to impose the minimum term without running afoul of *Alleyne*.