# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47762-9-II |
| Respondent, | |
| v. | |
| VENIAMIN GEORGE RUSEV, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Veniamin George Rusev appeals his conviction and sentence for assault in the first degree and two counts of robbery in the first degree.[1] We conclude that sufficient evidence supports Rusev's convictions and that the trial court properly instructed the jury on accomplice liability. We also conclude that the trial court gave the jury an improper "to convict" instruction on robbery; however, the error was harmless. The court further erred by imposing a mandatory minimum sentence on the assault charge. Based on our resolution of the case, we do not reach the double jeopardy issue, and because of newly amended RAP 14.2, we do not reach the issue of appellate costs.

We affirm, but remand for resentencing and order the trial court to strike the mandatory minimum sentence.

---

[1] Rusev assigns error to the trial court's imposition of trial costs without an inquiry into his ability to pay. However, because Rusev fails to provide us with any argument on the issue or citation to legal authority, we do not consider the issue. *State v. Harris*, 164 Wn. App. 377, 389 n.7, 263 P.3d 1276 (2011); RAP 10.3(a)(4).

## FACTS[2]

Ihor Onishchuk sold a Mercedes-Benz to his cousin, Oleg Mikhalchuk. Oleg and his brother, Yaheni, were cousins of Ihor and his brother, Dmytro. The Mikhalchuk brothers also knew Rusev. Oleg told Rusev about some issues with the Mercedes not working properly. Rusev said he "doesn't like people who are cheating the other people." 7 Report of Proceedings (RP) at 675.

Alesik, a close friend of Ihor and Dmytro, also knew Rusev. Rusev worked on Alesik's Volvo. Alesik loaned Rusev his Volvo to drive for a few months while Rusev fixed it.

On February 23, 2014, Alesik called Ihor and Dmytro, and asked them to pick up the Volvo from Rusev. The brothers planned to go together, so Ihor could drive his own car, and Dmytro could drive the Volvo to Alesik. Alesik told Rusev over the phone that Ihor and Dmytro would pick up the car, and reminded Rusev that he had previously met Ihor.

Before the brothers went to pick up the Volvo, Rusev told Vossler Blesch that he did not like that Ihor sold Oleg a broken car. Rusev told Blesch that he wanted to rob the brothers and scare them because they cheated their own family. Rusev said he did not trust the brothers and asked Blesch to stay. Blesch carried a firearm in his waistband and Rusev told Blesch to reveal it when the brothers arrived, so they would see it and be intimidated.[3]

---

[2] As the parties note in their briefs, the names of people involved in the case may be confusing and often have alternate spellings. For ease of reading, Veniamin Rusev and Vossler Blesch, the defendant and co-defendant, will be referred to by their last names. Because the victims shared the last name Onishchuk, they are referred to by their first names, Ihor and Dmytro. The brothers' cousins, Oleg and Yaheni Mikhalchuk, will also be referred to by their first names. Finally, Vitali Alesik, will be referred to by his last name. We intend no disrespect.

[3] Later, Blesch testified that Rusev did not instruct him to bring the firearm, Blesch planned to bring it along. Yet, Rusev clearly knew that Blesch had his gun with him.

When the brothers arrived at Rusev's, they drove into the alleyway behind his garage. Rusev waited for them, standing in the doorway to the garage. Rusev asked them if they were picking up the Volvo. He acted normal and smiled at them. Rusev shook the brothers' hands.

When Dmytro entered the garage, he saw a stranger, Blesch, with a gun in his waistband. After Ihor entered the garage, Rusev closed and locked the door. Within seconds, Blesch pulled the gun out of his waistband and pointed it at the brothers.

Ihor and Dmytro stood approximately five to seven feet away from Blesch and Rusev. The brothers spoke in Russian with Rusev. Rusev spoke aggressively and cursed. Blesch did not understand Russian, and could not follow the conversation.

Rusev walked back and forth in front of the brothers. Blesch described Rusev as circling them "kind of like a predator stalking his prey." 10 RP at 977. Based on instruction from Rusev, Blesch "rack[ed] the slide" and ejected a bullet out of the chamber of the gun to intimidate the brothers; Rusev kicked it out of the way. 5 RP at 392.

Rusev demanded the brothers' wallets and cell phones, and Dmytro's watch. Ihor tried to talk to Rusev in a friendly manner, but Rusev told him to be quiet or he would kill them. Rusev gestured with his head to Blesch to come closer with the gun. Blesch moved closer to them and gestured with the gun for the brothers to hand the items over. The brothers obeyed.

Rusev took one wallet and put it on top of the Volvo and gave the other wallet to Blesch. Rusev then demanded the brothers take off their jackets and shoes. They again obeyed. Rusev also demanded their car keys; Ihor handed them to Rusev. Rusev handed their phones and the keys to Blesch, and Blesch put them in his jacket pocket.[4] Blesch said to Rusev, "What the hell?"

---

[4] Rusev never returned any of the items to Ihor or Dmytro.

10 RP at 984. Rusev said something along the lines of "trust me." 10 RP at 985. Rusev finally ordered the brothers to take off their pants. Ihor refused.

Rusev then asked Ihor, "[A]re you the owner of the Mercedes?" 9 RP at 810. Ihor agreed that he was the owner. Rusev picked up the wallet off the Volvo, looked at Ihor's driver's license, and placed it back. Rusev phoned Yaheni and asked Yaheni the name of his cousin. Yaheni responded, "I[h]or Onishchuk." 7 RP at 571.

Ihor told Dmytro that they would not "leave this place alive," and that they would need to get out of there at "any price." 5 RP at 397-98. When Rusev hung up the phone, he began to walk behind the brothers. Ihor grabbed Rusev and held him. Dmytro grabbed Rusev from behind and tried to push the group towards the door to escape. Rusev cried out, "Voss, help me." 10 RP at 995. While Dmytro tried to open the door, Blesch fired the gun, striking and injuring Ihor.

Rusev seemed surprised that Blesch shot the gun and he told Blesch to leave. Rusev told Dmytro that Blesch was not supposed to fire the gun, he was only supposed to scare them. Ihor suffered a gunshot wound to the neck, chest, and arm that caused a significant spinal cord injury, rendering him a partial quadriplegic. He could move his hands, but nothing else from the neck down.

Blesch turned himself into the police shortly thereafter. Blesch claimed that he followed Rusev's lead throughout the incident. Blesch pled guilty to assault in the first degree and two counts of robbery in the first degree.

After the shooting, law enforcement arrested Rusev. Rusev identified Blesch as the shooter and stated that Blesch fled after shooting Ihor. An officer noticed that when Rusev left the scene to receive medical attention for an injury to his ear, he took a wallet out of his pocket, said that it

4

was not his, and dropped it on the ground. A forensic specialist found Ihor's wallet on top of the

Volvo in the garage.

The State charged Rusev as an accomplice to one count of assault in the first degree and

two counts of robbery in the first degree, each with firearm enhancements.[5]

The trial court instructed the jury on accomplice liability:

> A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he either:
> (1) Solicits, commands, encourages, or requests another person to commit the crime: or
> (2) Aids or agrees to aid another person in planning or committing the crime.
> The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and ready to assist by his presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

Clerk's Papers (CP) at 131 (Instr. 5). Rusev did not object to this instruction.

The trial court instructed the jury on the elements of robbery in the first degree:[6]

> To convict the defendant of the crime of robbery in the first degree as charged in Count IA [and II-A], each of the following six elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 23rd day of February, 2014, the defendant or a person to whom the defendant was acting as an accomplice; unlawfully took personal property from Ihor Onishchuk [or Dmytro Onishchuk];
> (2) That the defendant or a person to whom the defendant was acting as an accomplice, intended to commit theft of the property;
> (3) That the taking was against Ihor Onishchuk's [or Dmytro Onishchuk's] will by the defendant's or a person to whom the defendant was acting as an accomplice, use or threatened use of immediate force, violence, or fear of injury to that person or to the person or property of another;

---

[5] RCW 9A.56.190; RCW 9A.56.200(1)(a)(ii); RCW 9.41.010; RCW 9A.36.011(1)(a).

[6] The instructions were identical for both counts other than the name of the victim.

(4) That force or fear was used by the defendant or a person to whom the defendant was acting as an accomplice, to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5)(a) That in the commission of these acts or in immediate flight therefrom the defendant or a person to whom the defendant was acting as an accomplice, was armed with a deadly weapon or

(b) That in the commission of these acts or in the immediate flight therefrom the defendant or a person to whom the defendant was acting as an accomplice, displayed what appeared to be a firearm or other deadly weapon; and

(6) That any of these acts occurred in the State of Washington.

CP at 139, 141 (Instr. 13, 14). Rusev took exception to these instructions because he argued that the court should include a theft instruction that stated there must have been an intent to permanently deprive the owner of the property as an element.

The jury found Rusev guilty of one count of assault in the first degree and two counts of robbery in the first degree. By special verdict, the jury found Rusev or the person to whom he acted as an accomplice, was armed with a firearm at the time of each of the three counts.

The trial court sentenced Rusev to 335 months of confinement. The trial court noted that the "confinement time on Count(s) III [assault] contain(s) a mandatory minimum term of 60 months." CP at 221. The trial court also entered an order of indigency. Rusev appeals.

ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Rusev argues insufficient evidence supports his convictions for all counts. He argues that he did not know Blesch would assault Ihor. Rusev also argues that he did not take the property with an intent to steal and he did not retain possession of any of the property, and thus, insufficient evidence supports his convictions for robbery in the first degree. We disagree.

A.    STANDARD OF REVIEW

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have

6

found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

"In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Homan*, 181 Wn.2d at 106 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). In addition, we "must defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence." *Homan*, 181 Wn.2d at 106.

B.    ASSAULT IN THE FIRST DEGREE

To convict Rusev of assault in the first degree, the State had to prove that with intent to inflict great bodily harm, Rusev, or an accomplice, assaulted Ihor with a firearm or deadly weapon or by any force or means likely to produce great bodily harm or death. RCW 9A.36.011(1)(a).

Because the State charged Rusev as an accomplice, the State had to prove that Rusev "'must have known generally that he was facilitating an assault, even if only a simple, misdemeanor level assault, and need not have known that the principal was going to use deadly force or that the principal was armed.'" *State v. McChristian*, 158 Wn. App. 392, 401, 241 P.3d 468 (2010) (quoting *In re Pers. Restraint of Sarausad*, 109 Wn. App. 824, 836, 39 P.3d 308 (2001)). "In Washington, an accomplice need not be aware of the exact elements of the crime. As long as the defendant engaged in conduct that is 'the crime,' the defendant may be found guilty." *State v. Berube*, 150 Wn.2d 498, 508-09, 79 P.3d 1144 (2003) (internal citation omitted).

Here, it is undisputed that Blesch assaulted Ihor with a firearm and caused Ihor great bodily harm. Sufficient evidence shows that Rusev aided and abetted Blesch in the commission of an assault. Rusev arranged for the brothers to come to his house. He also arranged for Blesch to be present with his gun. Rusev said he wanted to scare the brothers. Rusev wanted Blesch to have the firearm and display it to the brothers as intimidation. Within seconds of the brothers entering the garage, Blesch displayed the gun and pointed it at them. After Blesch ejected a bullet, Rusev kicked it out of the way. Ihor tried to talk to Rusev in a friendly manner, but Rusev told him to be quiet or he would kill them. Rusev gestured to Blesch to get closer with the gun. Finally, Blesch intentionally shot at Ihor and severely injured him.

Based on the foregoing and the record as a whole, we conclude that sufficient evidence supports Rusev's conviction for assault in the first degree.

C.      ROBBERY IN THE FIRST DEGREE

"A person is guilt of robbery in the first degree if (a) In the commission of a robbery or of immediate flight therefrom, he or she: . . . (ii) Displays what appears to be a firearm or other deadly weapon." RCW 9A.56.200(1). RCW 9A.56.190 defines robbery.

> A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

RCW 9A.56.190.

Robbery requires the intent to commit a theft. RCW 9A.56.190. Theft is defined as wrongfully obtaining or exerting unauthorized control over the property of another with intent to deprive the person of such property. RCW 9A.56.020. The trial court instructed the jury that the definition of robbery includes the intent to commit theft.

8

Rusev argues that the State had to prove an intent to permanently deprive the brothers of their property. "'The crime of theft requires as one element an 'intent to deprive.'" *State v. Crittenden*, 146 Wn. App. 361, 370, 189 P.3d 849 (2008) (quoting RCW 9A.56.202(1)(a)). The common law element of intent to permanently deprive is not required. The legislature purposefully omitted it. *State v. Komok*, 113 Wn.2d 810, 816-17, 783 P.2d 1061 (1989); *Crittenden*, 146 Wn. App. at 370. Rusev's argument fails.

Because the State charged Rusev as an accomplice, the State also had to prove that Rusev had general knowledge of the crime of robbery. Rusev had to have knowledge that Blesch would take personal property from Ihor and Dmytro against their will with the threat of force with a deadly weapon.

Before the brothers arrived, Rusev told Blesch that he wanted to rob the brothers and scare them because they cheated their own family. Rusev told Blesch to reveal the firearm in his waistband when the brothers walked in so they would see it and be intimidated. Rusev demanded the brothers' wallets and cell phones, and Dmytro's watch. Blesch gestured with the gun for them to hand the items over. Rusev also demanded that they take off their jackets and shoes. Ihor and Dmytro gave the items to Rusev. Rusev demanded their car keys, and Ihor handed them to Rusev. Rusev handed their phones and the keys to Blesch, and Blesch put them in his jacket pocket. Rusev never returned the items to Ihor or Dmytro.

When considering the evidence in the light most favorable to the State, sufficient evidence supports Rusev's convictions for both counts of robbery because Rusev and Blesch took personal items from each of the brothers by threatened force. Therefore, sufficient evidence supports all three of Rusev's convictions.

II.    JURY INSTRUCTIONS

Rusev challenges two jury instructions on appeal. First, he argues that the trial court erred by instructing the jury on the to-convict instruction for robbery in the first degree because the instruction relieved the State of its burden to prove an essential element, that the brothers each had a possessory interest in the items taken from them. Rusev also argues that the trial court erred by instructing the jury on accomplice liability because the instruction relieved the State of its burden to prove that he committed an overt act.

We conclude that the trial court erred by instructing the jury on the to-convict robbery instruction, but the error was harmless. We also conclude that the trial court did not err with its accomplice liability instruction.

A.    STANDARD OF REVIEW

Jury instructions are appropriate if they allow the parties to argue their theories of the case, do not mislead the jury, and do not misstate the law. *State v. Stevens*, 158 Wn.2d 304, 308, 143 P.3d 817 (2006). We review de novo whether the jury instructions adequately state the applicable law, in the context of the jury instructions as a whole. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "[J]ury instructions read as a whole must make the relevant legal standards manifestly apparent to the average juror." *State v. Marquez*, 131 Wn. App. 566, 575, 127 P.3d 786 (2006).

B.    ROBBERY TO-CONVICT INSTRUCTIONS

Rusev argues that an essential element of robbery is proving that the victim had a possessory interest in the property taken. He further argues that the robbery in the first degree to-convict instructions omitted this element and relieved the State of its burden to prove robbery.

The essential elements of a crime are those that the prosecution must prove to sustain a conviction. *State v. Peterson*, 168 Wn.2d 763, 772, 230 P.3d 588 (2010). A "to convict" instruction must provide a correct statement of all the necessary elements. *State v. DeRyke*, 149 Wn.2d 906, 911, 73 P.3d 1000 (2003). "However, a criminal statute is not always conclusive regarding the elements of a crime. Courts may find nonstatutory, implied elements." *State v. Richie*, 191 Wn. App. 916, 922, 365 P.3d 770 (2015).

Recently, this court held in *Richie* that whether the victim has an ownership or possessory interest in the property taken is an essential, implied element of robbery. 191 Wn. App. at 924. The to-convict instruction challenged in *Richie* followed WPIC 37.02,[7] 191 Wn. App. at 928, as did the instructions in this case.

*Richie* concluded that this instruction's language omitted the essential implied element of whether the victim of a robbery has an ownership, representative, or possessory interest in the property taken. 191 Wn. App. at 928-29. Accordingly, the court held that the trial court's instruction relieved the State of its burden to prove every element of the crime. *Richie*, 191 Wn. App. at 928. The same is true in this case.

"[T]he omission of an essential element of a crime from the to-convict jury instructions may be subject to a harmless error analysis." *Richie*, 191 Wn. App. at 929. "[A] defendant is entitled to a new trial unless the error can be declared harmless beyond a reasonable doubt." *State v. Woods*, 138 Wn. App. 191, 202, 156 P.3d 309 (2007). "Such an omission is harmless when it is clear that it did not contribute to the verdict; for example, when uncontroverted evidence supports the omitted element." *Richie*, 191 Wn. App. at 929. But the error is not harmless if "'the

---

[7] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.02, at 667 (3d ed. 2008).

evidence and instructions leave it ambiguous as to whether the jury could have convicted on improper grounds.'" *Richie*, 191 Wn. App. at 929 (quoting *State v. Schaler*, 169 Wn.2d 274, 288, 236 P.3d 858 (2010)).

Here, the to-convict instruction omitted an essential implied element. But the evidence on this element was uncontroverted. Both Ihor and Dmytro testified that Rusev ordered them to hand over their items. In addition, there was testimony that one of the wallet's contained Ihor's driver's license. As a result, we conclude that the instructional error was harmless beyond a reasonable doubt because it was uncontroverted that both victims had possessory interests in the property taken.

C.     ACCOMPLICE LIABILITY INSTRUCTION

Rusev argues that the trial court erred by instructing the jury on accomplice liability because the instruction relieved the State of its burden to prove that he committed an overt act.

Rusev did not object to this instruction at trial. Generally, an appellate court may refuse to entertain a claim of error not raised before the trial court. RAP 2.5(a). However, we address claims of manifest error affecting a constitutional right. *State v. Gordon*, 172 Wn.2d 671, 677, 260 P.3d 884 (2011); RAP 2.5(a). "The failure to instruct a jury on every element of a charged crime is an error of constitutional magnitude." *Gordon*, 172 Wn.2d at 677. Therefore, we address the issue.

Here, the instruction did not relieve the State of its burden because it made clear to the jury that Rusev needed more than passive assent to Blesch's acts. The instruction stated that "more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice." CP at 131 (Instr. 5). In addition, other courts have upheld

12

this same jury instruction. *Berube*, 150 Wn.2d at 508-09; *State v. Brown*, 147 Wn.2d 330, 338, 58 P.3d 889 (2002).

Therefore, we conclude that the trial court did not err by instructing the jury on accomplice liability because the instruction did not relieve the State of its burden.

III.    MANDATORY MINIMUM SENTENCE

Rusev argues, and the State concedes, that the trial court denied his right to a jury trial by imposing a mandatory minimum sentence on the assault conviction. We agree that the trial court erred. Because the trial court may have imposed a different sentence knowing assault in the first degree did not have a mandatory minimum, we remand the case for resentencing.

Any error implicating a criminal defendant's Sixth Amendment right to a jury trial may be raised for the first time on appeal. *State v. Hughes*, 154 Wn.2d 118, 143, 110 P.3d 192 (2005), *abrogated on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). We review whether a sentence is legally erroneous de novo. *State v. Dyson*, 189 Wn. App. 215, 224, 360 P.3d 25 (2015), *review denied*, 184 Wn.2d 1038 (2016).

"[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Dyson*, 189 Wn. App. at 225 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). This rule also applies when a trial court imposes a mandatory minimum sentence based on facts not inherent in the guilty verdict itself.[8] *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 2161, 186 L. Ed. 2d 314 (2013). Thus, "[a]ny fact

---

[8] As an example, a person convicted of murder in the first degree must be sentenced to a mandatory minimum sentence of 20 years. RCW 9.94A.540. Other than a finding of guilty, no other jury finding is required to impose this sentence.

that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Dyson*, 189 Wn. App. at 225.

In this case, in order to impose a mandatory minimum sentence of five years on the assault in the first degree charge, a jury would have to specially find that Rusev used force or means likely to result in death or that he intended to kill the victim. RCW 9.94A.540(1)(b). "Washington courts have held that RCW 9.94A.540's five-year mandatory minimum does not automatically attach to a first degree assault conviction." *Dyson*, 189 Wn. App. at 227. It "necessarily requires a separate factual finding beyond the jury's finding of guilt of first degree assault." *Dyson*, 189 Wn. App. at 227.

Here, the jury did not specially find that Rusev used force or means likely to result in death or intended to kill the victim, as required. Therefore, the trial court erred in imposing a mandatory minimum sentence.

## IV.    DOUBLE JEOPARDY

Rusev argues that because he should not have been convicted of assault in the first degree, and if this court remands for imposition of a sentence on assault in the second degree, that conviction should merge with the robbery in the first degree charge to avoid violating double jeopardy. Because we do not remand the case on the basis of insufficient evidence, we do not address this issue.

## V.    APPELLATE COSTS

Rusev asks us to not impose appellate costs, asserting that he does not have the ability to pay because he is indigent. Under *State v. Grant*, 196 Wn. App. 644, 650, 385 P.3d 184 (2016), a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of costs after the State files a cost bill. A commissioner of this court will

14

consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Rusev objects to that cost bill.

We affirm, but remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, C.J.

Lee, J.