IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 85324-4-I |
| JOHN SANFORD MILLER, | UNPUBLISHED OPINION |
| Petitioner. | |

BOWMAN, A.C.J. — John Sanford Miller pleaded guilty to one count of communication with a minor for immoral purposes and two counts of commercial sexual abuse of a minor. In this untimely personal restraint petition (PRP), he seeks relief from his 2021 judgment and sentence. Miller asserts that his terms of confinement and community custody are facially invalid because the court imposed a sentence greater than the statutory maximum allowed for each offense. He also asserts that the court imposed facially invalid community custody conditions (Conditions) about Internet and computer usage because they unduly infringe on his rights under the First Amendment to the United States Constitution. The State concedes error as to these assertions, and we accept those concessions. Miller also challenges other Conditions. But because his petition is untimely, and he does not establish that these other Conditions are facially invalid, his challenges are time barred. We grant Miller's petition in part, deny it in part, and remand for the trial court to resentence Miller consistent with this opinion.

FACTS

In August 2021, Miller pleaded guilty to one count of communication with a minor for immoral purposes and two counts of commercial sexual abuse of a minor.[1]  In his guilty plea statement, Miller acknowledged:

> Between February 24, 2020 and February 25, 2020, in King County, WA, I sent electronic communications . . . with the intent to reach a minor and communicated with a fictitious [15] year old, who I believed to be under 18, for immoral purposes of a sexual nature.
>
> Between January 17, 2020 and February 26, 2020, in King County, WA, I provided something of value to K.G[.]-G. . . . as compensation for engaging in sexual conduct with me.
>
> Between February 9, 2020 and February 26, 2020, in King County, WA, I provided something of value to S.R. . . . as compensation for engaging in sexual conduct with me.
>
> I provided U.S. currency to both minors, K.G.-G. and S.R., in exchange for sexual conduct.

In September 2021, the trial court sentenced Miller.  The court imposed the following special Conditions for sex offenders:

> 5.    Inform the Supervising CCO [(community corrections officer)] and sexual deviancy treatment provider of any dating relationship.  Disclose sex offender status prior to any sexual contact.  Sexual contact in a relationship is prohibited until the treatment provider approves of such.
> . . . .
> 8.    Consent to DOC [(Department of Corrections)] home visits to monitor compliance with supervision.  Home visits include access for the purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint control/access.
> 9.    Do not consume alcohol.
> . . . .

---

[1] The State also charged Miller with two other counts.  The State recommended dismissing those counts as part of Miller's plea agreement, and the trial court dismissed them at sentencing.

11. Submit to and be available for polygraph examination as directed to monitor compliance with conditions of supervision.

The court also imposed crime-related Conditions for offenses involving minors and computers, phones, or social media:

17. . . . Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, day[ ]care facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or the CCO.
. . . .
23. . . . No [I]nternet access or use, including e[-]mail, without the prior approval of the supervising CCO.
24. . . . No use of a computer, phone, or computer-related device with access to the Internet or on-line computer service except as necessary for employment purposes (including job searches). The CCO is permitted to make random searches of any computer, phone or computer-related device to which the defendant has access to monitor compliance with this condition.

Miller did not object to these Conditions at sentencing or file a direct appeal after the court entered his judgment and sentence. So, his judgment became final when the court filed it on September 10, 2021.[2]

In April 2023, more than a year and a half later, Miller filed this PRP.

ANALYSIS

Miller asserts that his terms of confinement and community custody are facially invalid because the court imposed a sentence greater than the statutory maximum allowed for each of his three convictions. He also asserts that the court imposed facially invalid Conditions about Internet and computer usage because they unduly infringe on his First Amendment rights. The State

_____

[2] *See* RCW 10.73.090(3)(a).

concedes error as to these assertions. Miller also challenges other Conditions as facially invalid. We address each argument in turn.

Relief through a PRP is extraordinary. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). A petitioner may seek relief through a PRP when he is under unlawful restraint. RAP 16.4(a); *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 149, 866 P.2d 8 (1994). To be timely, a petitioner challenging a judgment and sentence must file a PRP within one year after the judgment becomes final if "the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). The petitioner bears the burden of showing that they timely filed their PRP. *In re Pers. Restraint of Quinn*, 154 Wn. App. 816, 832, 226 P.3d 208 (2010). Untimely challenges to a final judgment and sentence are time barred, and we will not consider them. *Id.*

Miller does not dispute that he filed his PRP more than a year after his judgment and sentence became final, and he does not rely on any of the exceptions to the one-year time limit provided in former RCW 10.73.100 (1989).[3] So, his PRP is untimely. There is also no question that a court of competent jurisdiction sentenced him. So, Miller's challenges are time barred unless he can establish that each alleged sentencing defect is invalid on its face. *Coats*, 173 Wn.2d at 138 (quoting *In re Pers. Restraint of LaChapelle*, 153 Wn.2d. 1, 6, 100 P.3d 805 (2004)).

---

[3] Former RCW 10.73.100 provides that "[t]he time limit specified in RCW 10.73.090 does not apply to a petition . . . based solely on one or more" of the grounds set forth in subsections 1 through 6 of former RCW 10.73.100.

4

"[T]he general rule is that a judgment and sentence is not valid on its face if the trial judge actually exercised authority (statutory or otherwise) it did not have." *In re Pers. Restraint of Scott*, 173 Wn.2d 911, 917, 271 P.3d 218 (2012). "Invalid on its face" means "the judgment and sentence evidences the invalidity without further elaboration." *In re Pers. Restraint of Hemenway*, 147 Wn.2d 529, 532, 55 P.3d 615 (2002) (citing *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 50 P.3d 618 (2002). Matters "of fact and trial judge discretion" are "not evident on the face of the judgment and sentence without further elaboration." *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 814, 383 P.3d 454 (2016) (citing *In re Pers. Restraint of Shale*, 160 Wn.2d 489, 494-95, 158 P.3d 588 (2007)).

"Constitutionally invalid on its face" means "a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *Thompson*, 141 Wn.2d at 718. Significantly, our Supreme Court has recognized that the court can infringe on a convicted offender's constitutional rights during a term of community custody if the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, authorizes it. *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996). But the Conditions must be "sensitively imposed" and " 'reasonably necessary to accomplish the essential needs of the state and public order.' " *State v. Bahl*, 164 Wn.2d 739, 757, 193 P.3d 678 (2008)[4] (quoting *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993)). We review de novo whether a sentence is legally erroneous. *State v. Dyson*, 189 Wn. App. 215, 224, 360 P.3d 25 (2015).

---

[4] Internal quotation marks omitted.

5

1.  Terms of Confinement and Community Custody

Miller agues, and the State concedes, that the terms of his confinement and community custody exceed the statutory maximum penalty allowed for his offenses.  We accept the State's concession.

Miller's conviction for communication with a minor for immoral purposes is a class C felony.  RCW 9.68A.090(2).  And Miller's convictions for commercial sexual abuse of a minor are class B felonies.  RCW 9.68A.100(2).  The statutory maximum for a class C felony is 60 months, and the statutory maximum for a class B felony is 120 months.  RCW 9A.20.021(1)(c), (b).

Here, the sentencing court imposed a sentence of 29 months on the communication with a minor conviction and 89 months on each commercial sexual abuse of a minor conviction.  But the court also imposed 36 months of community custody on each conviction, resulting in a total sentence of 65 months, 125 months, and 125 months for each count, respectively.

The State concedes:

> RCW 9.94A.701(1)(a) prescribes a three-year term of community custody for convicted sex offenders such as Miller. However, RCW 9.94A.701(10) also requires that the "term of community custody specified by this section shall be reduced by the court whenever an offender's standard range term of confinement in combination with the term of community custody exceeds the statutory maximum for the crime as provided in RCW 9A.20.021."  By not reducing the term of community custody in compliance with RCW 9.94A.701(10) the trial court did exceed its statutory authority and that part of the judgment and sentence is facially invalid. *In re Pers. Restraint of Snively*, 180 Wn.2d 28, 32, 320 P.3d 1107 (2014).
>
> The proper remedy is for this matter to be remanded to the trial court to correct the facially invalid portion of the sentence. [*Snively*, 180 Wn.2d at 32].  In this case that correction requires adjusting the term of community custody to 31 months for all three

counts, such that the total terms of confinement and community custody do not exceed the statutory maximum terms.

We agree with the parties that Miller's sentence exceeds the statutory maximum penalty and remand for resentencing to reduce the terms of community custody on all three counts.

2. Condition 5—Dating Relationships and Sexual Contact

Miller asserts that Condition 5 is not crime related and an unconstitutional deprivation of his rights under the First Amendment. We disagree.

Condition 5 mandates Miller to inform his CCO and sexual deviancy treatment provider "of any dating relationship" and to disclose his sex offender status "prior to any sexual contact." The Condition prohibits any sexual contact in a relationship "until the treatment provider approves of such."

The trial court had discretionary authority to impose Condition 5 under the SRA. RCW 9.94A.703(3)[5] provides, in relevant part:

As part of any term of community custody, the court *may* order an offender to:
. . . .
(b) Refrain from direct or indirect contact with . . . a specified class of individuals;
. . . .
(d) Participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community;
. . . ; or
(f) Comply with any crime-related prohibitions.

The SRA defines a "crime-related prohibition" as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

_____

[5] Emphasis added.

Miller does not dispute that the court had the statutory authority to impose Condition 5 under RCW 9.94A.703(3). Rather, he contends that the Condition is not crime related. But a determination as to whether a Condition is crime related requires an inquiry into whether the Condition "directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). And an inquiry into the circumstances of the crimes underlying Miller's convictions involves "a matter of fact, and trial judge discretion," requiring elaboration beyond "the face of [his] judgment and sentence." *Swagerty*, 186 Wn.2d at 814 (citing *Shale*, 160 Wn.2d at 494-95). So, Miller's contention does not establish that Condition 5 is facially invalid.

Miller also asserts that Condition 5 is facially invalid because it is an unconstitutional deprivation of his First Amendment rights of freedom of speech and association. We disagree.

Although the requirements of Condition 5 constitute an imposition on Miller's First Amendment rights, as discussed, the court may infringe on those rights during a term of community custody if authorized by the SRA. *Ross*, 129 Wn.2d at 287. And, again, Miller does not dispute that the SRA authorizes Condition 5. So, we must consider only whether the requirements of Condition 5 are sensitively imposed and reasonably necessary to ensure an essential need of our state. We conclude they are.

First, Condition 5 is sensitively imposed because it does not constitute a total ban on Miller having dating relationships or engaging in sexual contact. Rather, it requires that Miller inform his CCO and sexual deviancy treatment

provider of when he enters a dating relationship and that he get approval from his treatment provider before engaging in sexual contact. Second, the requirements of this Condition are reasonably necessary to ensure an essential need of our state. Given Miller's sexual crimes against minors, requiring such disclosures and approval is reasonably necessary to ensure the protection of minors from both immoral communications and sexual abuse and to ensure that Miller's sexual conduct is safe for the community.

Further, Condition 5 ensures a purpose beyond his other Conditions. It notifies potential romantic partners who do not have children of their own, but may have relationships with others that do, that they could be providing Miller access to minors. Indeed, the disclosure requirement provides notice to partners who may be responsible for the safety of live-in or visiting minors. And it is the only affirmative requirement that Miller put potential romantic partners on notice that they may need to take steps to protect minors in their care.

Miller does not establish that Condition 5 is constitutionally invalid on its face.[6] So, Miller's challenges are time barred.

3. Condition 8—Consent to DOC Home Searches

Miller next challenges Condition 8 requiring him to "[c]onsent to DOC home visits to monitor compliance with supervision." The home visits "include

---

[6] Miller relies on our unpublished decision in *State v. Mecham*, No. 79008-1-I (Wash. Ct. App. Mar. 2, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/790081.pdf, to support his assertion that the provisions of Condition 5 are unconstitutional. But in that case, the defendant objected to the challenged terms at sentencing, and then he challenged them on direct appeal. *Id.*, slip op. at 1, 3. So, our analysis required an inquiry into the record on direct appeal, whereas Miller's untimely PRP requires a threshold inquiry into the facial validity of the judgment and sentence before inquiring further. Miller's reliance on *Mecham* is misplaced.

access for the purposes of visual inspection of all areas of the residence in which the offender lives or has exclusive/joint control/access." Miller argues the Condition is facially invalid because it violates his right to privacy under article 1, section 7 of our state constitution. We disagree.

In *State v. Cates*, 183 Wn.2d 531, 533-34, 354 P.3d 382 (2015), our Supreme Court considered whether a facial challenge to a nearly identical Condition was ripe for review. It determined that the Condition was not facially unconstitutional because it did not allow any and all searches. *Id.* at 535. Rather, it limited the state's authority to conduct searches to those with the purpose of monitoring compliance with supervision. *Id.* So, any potential constitutional violation depended on how the state attempted to enforce the Condition. *Id.*

Because the inquiry into Condition 8 involves facts not yet known, Miller does not establish that Condition 8 is facially invalid, and his challenge is time barred.

4. Condition 9—Alcohol Consumption

Miller next contends that Condition 9 preventing him from consuming alcohol is facially invalid because it was a clerical mistake. We disagree.

The court imposed Condition 9 under RCW 9.94A.703(3)(e). Miller does not challenge whether the court had statutory authority to impose Condition 9. Rather, he contends that the court did not intend to prohibit his consumption of alcohol because the court did not also restrict his alcohol consumption under Condition 19, a crime-related Condition for "Offenses Involving

10

Alcohol/Controlled Substances."[7] But the trial court had discretionary authority to impose the challenged Condition, even if it was unrelated to Miller's crimes. That the trial court did not also restrict his alcohol consumption under Condition 19 does not, on its face, establish the invalidity of Condition 9.

Miller does not establish that Condition 9 is invalid on its face, and his challenge to this Condition is time barred.[8]

5. Condition 11—Polygraph Testing

Miller next asserts that Condition 11 requiring him to "[s]ubmit to and be available for" polygraph testing to monitor his compliance with the terms of his community custody is facially invalid. He argues it is an unconstitutional infringement on his First Amendment right not to speak and his right against self-incrimination under the Fifth Amendment to the United States Constitution. We disagree.

We agree that requiring Miller to submit to and be available for a polygraph examination infringes on his First Amendment rights. But, as discussed, his status as a criminal offender means that his constitutional rights are subject to infringements authorized by the SRA. And "a trial court has authority to impose monitoring conditions such as polygraph testing." *State v.*

---

[7] Condition 19 provides, "Do not purchase or possess alcohol."

[8] We also note that the proper remedy is to file a CrR 7.8(a) motion, not a PRP. CrR 7.8(a) concerns a "superior court's authority to correct clerical errors in its own documents." *State v. Bogart*, 30 Wn. App. 2d 752, 757-58, 546 P.3d 526, *review denied*, 3 Wn.3d 1017, 554 P.3d 1231 (2024). " 'The rule is limited to situations where there is a question whether a trial court intended to enter the judgment that was actually entered.' " *Id.* at 761-62 (quoting *Presidential Ests. Apt. Assocs. v. Barrett*, 129 Wn.2d 320, 326 n.5, 917 P.2d 100 (1996)). The court may grant relief under the rule "at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." CrR 7.8(a).

*Riles*, 135 Wn.2d 326, 342, 957 P.2d 655 (1998), *abrogated on other grounds by State v. Sanchez Valencia*, 169 Wn.2d 782, 239 P.3d 1059 (2010).

And Condition 11 is reasonably necessary and sensitively imposed. First, ensuring Miller's compliance with the terms of his community custody is reasonably necessary to accomplish the essential needs of the state and public order because there are valid state concerns about his crimes, including community safety and his own rehabilitation. Second, Condition 11 is sensitively imposed because the scope of the polygraph examination is limited to his compliance with the imposed Conditions.

Further, in light of his Fifth Amendment challenge, the purpose of the polygraph testing is to ensure Miller's compliance with his conditions of supervision, not to search for incriminating evidence. *See State v. Combs*, 102 Wn. App. 949, 952-53, 10 P.3d 1101 (2000) ("the scope of polygraph testing [is] to monitor only [the offender's] compliance with the community placement order and not as a fishing expedition to discover evidence of other crimes, past or present").

The trial court did not exceed its authority in imposing Condition 11, so it is not facially invalid. Miller's challenge to this Condition is time barred.

6. Condition 17—Stay Out of Areas where Children's Activities Occur

Miller next asserts that Condition 17 ordering him to stay out of areas where children's activities regularly occur or are occurring is facially invalid because it is unconstitutionally vague. We disagree.

Our decision in *In re Personal Restraint of Sickels*, 14 Wn. App. 2d 51,

469 P.3d 322 (2020), is instructive. There, we stated:

> Mr. Sickels's second vagueness challenge is to condition 16, which provides:
>> "Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO."
>
> . . . He relies for his challenge on *State v. Wallmuller*, 4 Wn. App. 2d 698, 423 P.3d 282 (2018), but that decision was reversed by the Washington Supreme Court, which held that a similar condition was not unconstitutionally vague. *State v. Wallmuller*, 194 Wn.2d 234, 236-37, 449 P.3d 619 (2019) (*Wallmuller* II).
>
> Mr. Sickels also argues that the authority granted to DOC or his CCO to identify proscribed locations in advance invites arbitrary enforcement, but he overlooks the fact that the condition's only command is its first sentence—"Stay out of areas where children's activities regularly occur or are occurring"—and no authority is granted to DOC or his CCO to vary that command. The condition simply places a burden on DOC or the CCO to affirmatively identify locations they deem to be prohibited by the command. This spares Mr. Sickels the burden and risk of self-identifying locations he might fear are prohibited. In this respect, it addresses a concern expressed by the dissent in *Wallmuller* II that an offender should be able to consult a list to know where he can or cannot go. *See Wallmuller* II, 194 Wn.2d at 248-50 (Wiggins, J., dissenting).

*Id.* at 66-67.

Miller does not establish that Condition 17 is facially invalid for vagueness.

We rejected a similar challenge to the same Condition in *Sickels*, and our

Supreme Court did so with a substantially similar Condition in *Wallmuller* II. We

see no reason to depart from those cases. Miller's vagueness challenge does

not establish that Condition 17 is constitutionally invalid on its face.

Still, Miller asserts that Condition 17 is also an unconstitutional deprivation of his right to travel. But our Supreme Court has instructed that "[w]hile the right to travel is recognized as a fundamental right of citizenship, this right is affected by a criminal conviction." *In re Pers. Restraint of Winton*, 196 Wn.2d 270, 274, 474 P.3d 532 (2020) (citing *Bagley v. Harvey*, 718 F.2d 921, 924 (9th Cir. 1983); *Jones v. Helms*, 452 U.S. 412, 420, 101 S. Ct. 2434, 69 L. Ed. 2d 118 (1981) ("appellee's own misconduct had qualified his right to travel interstate before he sought to exercise that right")).

Although Condition 17 does infringe on his right to travel, Miller's own misconduct justifies a restriction of this right. Given his plea of guilty to several sex offenses involving minors, the Condition limiting his travel to locations "where children's activities regularly occur or are occurring" serves an essential need of the state to protect minors from sexual abuse, and its scope is properly limited to corresponding locations. Miller does not establish that Condition 17 is constitutionally invalid on its face as an infringement on his right to travel.

Because Condition 17 is not facially invalid, Miller's challenge to this Condition is time barred.

7. Conditions 23 and 24—Internet Use

Miller argues, and the State concedes, that the Conditions restricting his use of the Internet are impermissibly broad limitations on his First Amendment rights. We accept the State's concession.

Conditions 23 and 24 limit Miller's use of the Internet, e-mail, and "a computer, phone, or computer-related device with access to the Internet" without

CCO approval, "except as necessary for employment purposes."  And his CCO

"is permitted to make random searches" of any phone or computer-related device

"to monitor compliance" with the Conditions.

Our decision in *In re Personal Restraint of Carrillo*, No. 80792-5-1 (Wash.

Ct. App. Oct. 18, 2021) (unpublished), https://www.courts.wa.gov/ opinions/pdf/

807935.pdf, is instructive.[9]  There, the defendant Carrillo pleaded guilty to sex

offenses involving minors, and the trial court imposed Conditions identical to

Miller's Conditions 23 and 24.  *Id.,* slip op. at 1, 12.  We held that those

Conditions were overbroad in violation of Carrillo's First Amendment rights:

> Overbreadth "goes to the question of whether [s]tate action
> is couched in terms so broad that it may not only prohibit
> unprotected behavior but may also prohibit constitutionally
> protected activity as well." *Sickels*, 14 Wn. App. 2d at 67. . . .
> The United States Supreme Court has emphasized the
> importance of the Internet, noting that "to foreclose access to social
> media altogether is to prevent the user from engaging in the
> legitimate exercise of First Amendment rights." *Packingham v.
> North Carolina*, [582] U.S. [98], 137 S. Ct. 1730, 1737, 198 L. Ed.
> 2d 273 (2017).  But, "it can be assumed that the First Amendment
> permits a [s]tate to enact specific, narrowly tailored laws that
> prohibit a sex offender from engaging in conduct that often
> presages a sexual crime, like contacting a minor or using a website
> to gather information about a minor." *Id.*  Judges may restrict a
> defendant's access to the Internet if those restrictions are "narrowly
> tailored to the dangers posed by the specific defendant." [*State v.
> Johnson*, 197 Wn.2d 740, 745, 487 P.3d 893 (2021)].
> The Washington Supreme Court recently approved of a
> community custody condition that the offender shall "not use or
> access the World Wide Web unless specifically authorized by [his
> community custody officer] through approved filters." *Johnson*, 197
> Wn.2d at 744 (alteration in original).  In *Johnson*, the court
> concluded "that any danger of arbitrary enforcement is constrained

---

[9] The State cited this case in its response brief for its "persuasive value" under GR 14.1.

by other documents related to" the convictions. *Id.* at 749.
According to the court,

> "the crimes themselves and the statement of probable cause provide sufficient direction to prevent arbitrary enforcement. The statement of probable cause contains a detailed recitation of the facts that led up to Johnson's arrest, including the role Johnson's Internet use played. When read in conjunction with this condition of community custody, these documents provide meaningful benchmarks to restrict arbitrary enforcement. Fairly read in the context of Johnson's crimes, he should not be allowed to use the Internet to solicit commercial sex or sex with children. An appropriate filter should be selected with this in mind."

*Id.*

> [Carrillo's] Conditions 23 and 24 are not narrowly tailored like those in *Johnson*. They do not limit the restrictions to the particular dangers posed by Carrillo, namely his ability to contact minors. Between the two provisions, Carrillo cannot use the Internet without permission from his CCO and cannot use an Internet-enabled device except for employment related purposes. The conditions essentially eliminate all recreational use of the Internet without CCO permission. They also impinge on Carrillo's ability to own smart devices or have and use cellphones for routine communication with family and friends. These conditions "sweep[ ] constitutionally protected free speech activities within [their] prohibitions" and are, therefore, overbroad. *City of Seattle v. Abercrombie*, 85 Wn. App. 393, 397, 945 P.2d 1132 (1997).
>
> Conditions 23 and 24 violate Carrillo's First Amendment rights.

*Id.*, slip op. at 14-16;[10] *see also State v. Geyer*, 19 Wn. App. 2d 321, 330, 496 P.3d 322 (2021) (agreeing that under *Johnson*, requiring preapproval for every action on a computer or the Internet is unnecessarily broad, but that "use of a filter, tailored to [the defendant's] risk to the community, would be a sufficiently narrow way to fulfill the [s]tate's goals").[11]

As with the identical Conditions in *Carrillo*, Conditions 23 and 24 were not narrowly tailored to balance Miller's First Amendment rights with the particular

---

[10] Some alterations in original.

[11] Footnote omitted.

dangers that he poses to minors. So, these Conditions are not constitutionally valid on their face, and we remand for the court to strike or revise Conditions 23 and 24.

We grant in part and deny in part Miller's PRP, and remand for the trial court to resentence Miller consistent with this opinion.

_____, ACJ

WE CONCUR:

_____        _____
Feldman, J.                    Coburn, J.